UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LOCAL 6-505M, GRAPHIC COMMUNICATIONS CONFERENCE/INTERNATIONAL BROTHERHOOD OF TEAMSTERS, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) NO: 4:11MC593HEA<br>) |
| CENVEO CORPORATION, | )<br>) |
| Defendant. | ) |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion to Vacate Arbitration Award,, [Doc. No. 1]. Defendant opposes the Motion. On April 2, 2013, the Court conducted a hearing on Plaintiff's Motion. For the reasons set forth below the Motion is denied.

### **Facts and Background**

As set forth in the Arbitration Award, the essential facts of this matter are not in dispute. Plaintiff, Local 6-505, graphic Communications Conference/International Brotherhood of Teamsters, (Union) is a labor organization representing certain employees of Defendant Cenveo Corporation. Plaintiff and Defendant are parties to a Labor Agreement effective January 1, 2008

to December 31, 2008 which contains provisions covering the wages, fringe benefits and terms and conditions of employment for certain employees of Defendant. In October and November, 2010, representatives of Defendant informed Plaintiff that it had leased a plant in Eureka, Missouri, approximately thirteen miles from the original plant in Crestwood, Missouri where Plaintiff's union employees worked in the Bindery Department of Defendant.

On November 30, 2010, Defendant gave Plaintiff a Worker Adjustment and Retraining Notification Act notice informing Defendant that all Bindery operations would cease as of January 29, 2011, and that all employees affected by the Bindery closing were expected to be permanently laid off and their employment terminated on January 29, 2011. Defendant advised Plaintiff that it intended to sell the Bindery assets to a third party.[1]

Defendant also notified Plaintiff that it would not comply with the severance pay provisions in the Agreement. Plaintiff filed a grievance pursuant to Section 34.1 of the Agreement alleging that Defendant had violated Sections 10.1

---

[1] Defendant entered into an Asset Purchase Agreement, a Supply Agreement and a Sublease with Infinity Fulfillment Group, LLC whereby Infinity would purchase Defendant's equipment for its bindery operation. Defendant subleased a protion of the Eureka facility to Infinity for it to conduct its bindery operation. Infinity, at the time of the Arbitration Award performed bindery service for Defendant, but it was also free to solicit other bindery work. Defendant reserved the right to repurchase the equipment, but could not do so until one year after the sale to Infinity.

and 10.4(F), which provide, in pertinent part:

> **Section 10.1** Layoff. In the event of lack of work within any job classification covered by this Agreement for any reason whatsoever, if the Employer determines that a reduction of the work force is necessary for either a temporary or indefinite period, the Employer shall reduce the work force by utilizing the following procedures in this order:
>
> \* \* \*
>
> (7) . . . Recall of employees shall be in reverse order of layoffs subject to their ability to perform the work to be done, except that the Employer shall have no responsibility to recall employees on layoff for lack of work for more than six (6) months. Employee who chooses the severance option described in Section 10.4 below at time of layoff, forfeits his/her recall rights....
>
> **Section 10.4** the employment relationship and continuous service of the employee shall be considered terminated (and subsequent re-employment, if any, shall be deemed to be new employment) in the following events:
>
> \* \* \*
>
> F. Not performing any work for the Employer due to layoff for six months. Severance option: In lieu of recall rights, the Company agrees to provide a lump-sum payment of one week of pay for every complete year of employment upon termination due to layoff (maximum lump-sum payment of 26 weeks). An employee must notify the Company, in writing, of his/her decision to elect the severance option sometime between the 1st and 60th day after layoff. Upon prior written request to the Employer, further extensions of time in writing with a copy to the Union may be granted at the Employer's sole discretion, where extenuating circumstances exist.

On December 22, 2010, Plaintiff processed the grievance to arbitration. In accordance with Section 34.3 of the Agreement, the parties requested a panel of arbitrators from the Federal Mediation and Conciliation Service.

On January 29, 2011, Defendant reduced the work force in the Bindery and "laid off" the twenty two (22) Union Bindery Workers. Within sixty (60) days of the layoff, all 22 Union Bindery workers sent notice to Defendant's Plant Manager informing him of the election to accept the severance option of a lump-sum payment.

An arbitration hearing was held on March 31, 2011 before Arbitrator Barry E. Simon. Both Plaintiff and Defendant were represented by counsel. Evidence was adduced in the form of testimony and exhibits. The parties were allowed the opportunity to submit post hearing briefs.

On July 13, 2011, Arbitrator Simon issued his Opinion and Award. Contained within the Opinion and Award was Arbitrator Simon's rendition of the issue before him:

> Did the Company violate Section 10.4 of the Agreement when it terminated the employment of its bindery employees on January 29, 2011 and did not afford them a severance option? If so, what is the appropriate remedy?

Arbitrator Simon concluded that the 22 Bindery Workers were terminated

and not laid off, and therefore not entitled to the severance pay option. He found that there had been no violation of the parties' Agreement. The grievance was therefore denied.

Plaintiff contends that Arbitrator Simon's Award exceeded his powers and was a violation of his authority and contractual obligation in Section 34.3 of the Agreement that the decision of the arbitrator must be in accordance with the terms and conditions of the Agreement.

## Discussion

### Standard of Review of Arbitration Award

"Judicial review of the arbitrator's ultimate decision is very deferential and should not be disturbed 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.' *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)." *Northern States Power Co., Minnesota v. International Broth. of Elec. Workers, Local 160*, 2013 WL 1285529, 2 (8th Cir. 2013). Thus, a court's review of an arbitration award is "extremely limited." *United Food & Comm. Workers v. Shop 'N Save Warehouse Foods, Inc.,* 113 F.3d 893, 894 (8th Cir.1997). The reviewing court "must accord an extraordinary level of deference to the underlying award." *Boise Cascade Corp. v. Paper Allied–Industrial, Chem.*

*& Energy Workers,* 309 F.3d 1075, 1080 (8th Cir.2002) (internal quotation marks omitted). For example, the court may not disturb the arbitrator's "view of the facts." *Alvey, Inc. v. Teamsters Local Union No. 688,* 132 F.3d 1209, 1212 (8th Cir.1997). Indeed, it may not revisit the merits of an award even if it believes the arbitrator "committed serious error" when interpreting the CBA at issue. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38 (1987). "An arbitrator's award must be enforced as long as he is arguably construing or applying the collective bargaining agreement rather than dispensing his own brand of industrial justice." *Homestake Mining Co. v. United Steelworkers of America,* 153 F.3d 678, 680 (8th Cir.1998) (internal quotation marks and brackets omitted). That standard is met as long as the award "draws its essence from" the governing CBA. *Int'l Paper Co. v. United Paperworkers Int'l Union,* 215 F.3d 815, 817 (8th Cir.2000).

"An arbitrator's award draws its essence from the parties' agreement as long as it is derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." *Williams v. National Football League,* 582 F.3d 863, 883 (8th Cir.2009) (internal brackets omitted). If an agreement's language is plain or "unmistakably clear," an arbitrator must enforce it as written, but if "the plain language of the parties' agreement is silent or ambiguous with respect to a disputed issue, an arbitrator is obliged to consider

other relevant sources of the parties' intent." *Boise Cascade,* 309 F.3d at 1082.

In this case, Arbitrator Simon set out the parties' positions, the relevant sections of the Agreement, and evidence adduced which explained the rationale behind Section 10.4(F). Critical to the Arbitrator's determination that Defendant did not violate the parties' agreement was an analysis of the terms of the agreement regarding whether the employees were terminated or laid off. By the Agreement's own terms, the Arbitrator determined that the employees were indeed terminated, as opposed to laid off such that they could exercise the right to forego recall in favor of the lump sum payment. That is, in order for the employees to have a right to the payment, they must have been able to have been recalled. Arbitrator Simon ascertained from the terms of the Agreement that the notice received by Plaintiff could only lead to the conclusion that the employees were terminated rather than laid off. Furthermore, the fact that Defendant could repurchase the equipment was also unavailing for the employees; in accordance with the terms of the Agreement, the employees could only be "laid off" for six months and the Asset Purchase Agreement afforded Defendant the right to repurchase only after a year had elapsed. Arbitrator Simon's Award, clearly draws its essence from the parties' Agreement.

## Conclusion

Pursuant to the deferential standard of review for arbitration awards, the Court concludes that Arbitrator Simon's Award draws its essence from the parties' Agreement, and as such, there is no basis for this Court to set aside his Award.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Vacate Arbitration Award,, [Doc. No. 1], is denied.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 22nd day of April, 2013.

_____
   HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE